# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYBERLUX CORPORATION,

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">-against-</div>

AJW PARTNERS, LLC, AJW OFFSHORE, LTD,
AJW QUALIFIED PARTNERS, LLC, and NEW
MILLENNIUM CAPITAL PARTNERS II, LLC,

<div style="margin-left:6em">Defendants.</div>

Case No. 07-CV-7808 (DAB)

ECF CASE

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

---

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Defendants AJW Partners, LLC, AJW*
*Offshore Ltd., AJW Qualified Partners, LLC,*
*and New Millennium Capital Partners II, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

552078-3

III

## THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS STATE-LAW CLAIMS

There is no complete diversity of citizenship. *Handelsman v. Bedford Village Assocs. L.P.*, 213 F.3d 48, 51-52 (2d Cir. 2000). As a result, the Court's sole basis for subject matter jurisdiction over the state law claim rests upon supplemental jurisdiction. If the Court dismisses the federal securities-law claims, it should apply 28 U.S.C. § 1367(c)(3) and decline to exercise of supplemental jurisdiction over these claims.

Cyberlux is a citizen both of Nevada, its state of incorporation, and North Carolina, the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Declarant Gary Post is a member of plaintiff NMCP (Post Dec; Ribotsky Dec.) Mr. Post's state of domicile is Nevada, and has been for the past year. (Post Dec.) Thus, NMCP is deemed a citizen of Nevada for diversity purposes. *See, Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 347-48(7th Cir. 2006). Accordingly, complete diversity as required by 28 U.S.C. § 1332(a)(1) does not exist in this action.

In two recent related actions, *AJW Partners, LLC, et al. v. RG Global Lifestyles, Inc., et al.*, 07 Civ. 1835(PAC) and *AJW Partners, LLC, et al. v. Bootie Beer Corp.*, 07 Civ. 18365(PAC), Judge Crotty of this Court decided the same diversity issue presented here. (Fleming Dec. Ex. J) The corporate defendants in those actions, represented by Ernest E. Badway, Esq., the same attorney who represents Cyberlux in this action, had removed them to this Court. On a motion to remand for lack of subject-matter jurisdiction, Judge Crotty held, citing *Handelsman*, 213 F.3d at 51-52, that incomplete diversity prevented jurisdiction because in each case a member of one of the plaintiff limited liability companies, *i.e.*, the defendants in this case, was a citizen of the same state as the defendant corporation. (Fleming Dec. Ex. J) The

19

diversity-related facts here are virtually identical to those in the actions that Judge Crotty

remanded to state court for lack of subject-matter jurisdiction.

Once a plaintiff's federal claims are dismissed early in the proceedings, and complete

diversity between the parties is lacking, federal courts customarily decline to exercise

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See, e.g., Martinez v. Simonetti,*

202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no

federal claims remained); *Sedaghatpour v. DoubleClick, Inc.*, 213 F. Supp. 2d 367, 375-76

(S.D.N.Y. 2002).

IV

<u>THE COURT SHOULD DISMISS CYBERLUX'S STATE-LAW CLAIMS</u>

Even if the Court does not dismiss both of Cyberlux's federal claims, and thus leaves a

basis for supplemental jurisdiction over Cyberlux's state-law claims, it should dismiss those

claims on the separate grounds that Cyberlux fails to plead them adequately. We review each

claim separately.

<u>Common-Law Fraud Claim</u>. In its Second Claim, Cyberlux alleges that defendants sold

Cyberlux stock short despite their promise in the Securities Purchase Agreement not to do so.

(Compl. ¶¶ 49-50) This concession — that the alleged misrepresentation is actually a covenant

in a contract — is fatal to the Second Claim for Relief. Under New York law, a claim of

fraudulent inducement of a contract does not state a cause of action if the acts alleged to

constitute fraud "do not arise from 'circumstances extraneous to, and not constituting elements

of, the contract' and therefore do not represent the breach of 'a legal duty independent of the

contract itself.'" *Baker v. Norman*, 226 A.D.2d 301, 643 N.Y.S.2d 30, 33 (1st Dep't 1996). *See*

*also Fallon v. McKeon*, 230 A.D.2d 629, 646 N.Y.S.2d 109, 110 (1st Dep't 1996) (affirming

dismissal of fraud claim that "fails to allege a breach of duty distinct from that arising from the

20

received from exercise of that Note. Cyberlux agreed in writing that defendants could sell those shares at any time after receipt, free of obligation to hold them for any length of time. (Compl. Ex. A § 2(a)) And Cyberlux has acknowledged defendants' contractual right to do so. In a public filing, Cyberlux disclosed that "all of the shares issuable upon conversion of the secured convertible notes *and upon exercise of our warrants*, may be sold without restriction." (Fleming Dec. Ex. E p. 5) (emphasis added)

<div align="center">Conclusion</div>

For the reasons set forth above, defendants respectfully request that the Court dismiss the Complaint. Based upon the Complaint's frivolity, the Court also should make a specific finding under 15 U.S.C. § 78u-4(c)(1) that Cyberlux has violated Fed. R. Civ. P. 11(b) by filing the Complaint, and thus merit sanctions of attorneys' fees and costs under 15 U.S.C. § 78u-4(c)(3)(A)(ii), after first giving them notice and opportunity, pursuant to 15 U.S.C. § 78u-4(c)(2), to submit a response.

Dated: New, York, New York
   September 21, 2007

        OLSHAN GRUNDMAN FROME ROSENZWEIG
        & WOLOSKY LLP

      By:  /s/ Thomas J. Fleming
          Thomas J. Fleming (TF 4423)
          Jack M. Kint, Jr. (JK 7947)
          *Attorneys for Defendants AJW Partners, LLC,*
          *AJW Offshore Ltd., AJW Qualified Partners,*
          *LLC, and New Millennium Capital Partners II,*
          *LLC*
          Park Avenue Tower
          65 East 55th Street
          New York, New York 10022
          (212) 451-2300

<div align="center">25</div>

552078-3

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYBERLUX CORPORATION,<br><br>        Plaintiffs,<br><br>    -against-<br><br>AJW PARTNERS, LLC, AJW OFFSHORE, LTD.,<br>AJW QUALIFIED PARTNERS, LLC and NEW<br>MILLENNIUM CAPITAL PARTNERS II, LLC,<br><br>        Defendant. | 07 Civ. 7808 (DAB)<br><br>DECLARATION |

GARY POST declares under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

1.  I submit this declaration to advise the Court of my residence and my ownership of a membership interest in New Millenium Capital Partners, LLC ("NMCP").

2.  I am a resident of Nevada, where I make my home. I reside in Zephyr Cove, Nevada. I have resided in Nevada since 2006. I have no plans to move, relocate or change my home to another State.

3.  I have been a member of NMCP since April 2000.

Dated: September 17 2007

               GARY POST

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYBERLUX CORPORATION,

                                    Plaintiffs,          07 Civ. 7808 (DAB)

                -against-                                 DECLARATION

AJW PARTNERS, LLC, AJW OFFSHORE, LTD.,
AJW QUALIFIED PARTNERS, LLC and NEW
MILLENNIUM CAPITAL PARTNERS II, LLC,

                                    Defendant.

        COREY RIBOTSKY swears under the penalties of perjury, pursuant to 28 U.S.C. §1746,

that:

        1.      I am the executive with responsibility for managing plaintiff New Millennium

Capital Partners II, LLC ("NMCP"), which is a limited liability company.  I submit this

declaration on personal knowledge.

        2.      Gary Post was a member of NMCP when this case was filed in September 2007,

and appeared in our records as a Nevada resident.  Mr. Post became a member when NMCP was

founded in 2000.  He continues as a member today, also as a resident of Nevada.  I have annexed

as Exhibit A, a copy of his original subscription for a membership interest, which I have redacted

to eliminate confidential personal information.  I have annexed as Exhibit B, a copy of the

change of address notice that NMCP received from Mr. Post in late 2006.

Dated: September 17, 2007

                                                    _____
                                                           COREY RIBOTSKY

552619-1

## Exhibit A

# NEW MILLENNIUM CAPITAL PARTNERS II, LLC

## SUBSCRIPTION AGREEMENT

*Gary M. Post
Personal Acct.*

NEW MILLENNIUM CAPITAL PARTNERS II, LLC

SUBSCRIPTION AGREEMENT

ARTICLE I

PURCHASE OF MEMBERSHIP INTEREST

1.01    Subscription. The undersigned ("Subscriber") hereby subscribes (the "Subscription") to a limited liability company membership interest in the amount set forth as the "Initial Capital Contribution" on the signature page hereto ("Interest") in New Millennium Capital Partners II, LLC (the "Company"), a limited liability company formed under the laws of the State of New York, with offices at 1670 Old Country Road, Suite 112, Plainview, New York 11803. This subscription shall become effective when it has been duly executed by Subscriber and the subscription agreement has been accepted and agreed to by First Street Manager II, LLC, the manager of the Company (the "Manager").

1.02    Receipt of Memorandum Acknowledged. Subscriber acknowledges receipt of a copy of the Confidential Private Placement Memorandum dated October 22, 1999 (the "Memorandum") and the Company's Operating Agreement dated as of May 7, 1999 ("Operating Agreement").

SUBSCRIBER ACKNOWLEDGES THAT SUBSCRIBER IS ACQUIRING THE INTEREST AFTER INVESTIGATION OF THE COMPANY AND ITS PROSPECTS AND THAT NO OFFER OR SOLICITATION HAS BEEN MADE TO SUBSCRIBER EXCEPT THROUGH THE MEMORANDUM. SUBSCRIBER FURTHER ACKNOWLEDGES THAT SUBSCRIBER IS NOT RELYING UPON ANY REPRESENTATION MADE BY ANY PERSON EXCEPT AS CONTAINED IN THE MEMORANDUM.

1.03    Payment For Subscription. Subscriber agrees that the contribution to the Company for the amount of Subscriber's subscription is to be made upon submission of this Subscription Agreement.

1.04    Company Right to Accept or Reject Subscription. The Company shall have the right to accept or reject the Subscription, in whole or in part, for any reason whatsoever, including but not limited to the belief of the Manager that Subscriber is not an Accredited Investor (as defined in Regulation D promulgated by the Securities and Exchange Commission under the Securities Act of 1933, as amended (the "1933 Act")).

ARTICLE II

REPRESENTATIONS AND WARRANTIES BY SUBSCRIBER
AND QUALIFICATION AS AN ACCREDITED INVESTOR

2.01    Representations and Warranties by Subscriber. Subscriber represents and warrants to the Company and Manager, as follows:

(a)      Subscriber is acquiring the Interest for Subscriber's own account, as principal, for investment purposes only and not with any intention to resell, distribute or otherwise dispose of or fractionalize the Interest, in whole or in part.

(b)      Subscriber is an Accredited Investor.

(c)      Subscriber has been furnished, has carefully read, and has relied solely (except for information obtained pursuant to paragraph (d) below), on the information contained in the Memorandum and the Operating Agreement, and Subscriber has not received any other offering literature or prospectus, and no representations or warranties have been made to Subscriber by the Manager, or its employees or agents, other than the representations of the Manager set forth herein and in the Memorandum and Operating Agreement.

(d)      Subscriber has had an unrestricted opportunity to: (i) obtain additional information concerning the offering of Interests pursuant to the Memorandum (the "Offering"), the Operating Agreement, Interest, the Manager, the Company and any other matters relating directly or indirectly to Subscriber's purchase of the Interest; and (ii) ask questions of, and receive answers from the Manager concerning the terms and conditions of the Offering and to obtain such additional information as may have been necessary to verify the accuracy of the information contained in the Memorandum and the Operating Agreement.

(e)      Subscriber has carefully reviewed the various risks of an investment in the Company, including the risks summarized under "CERTAIN RISK FACTORS" in the Memorandum. Subscriber can afford to bear the risks of an investment in the Company.

(f)      Subscriber understands that the Interests in the Company cannot be sold, assigned, transferred, exchanged, hypothecated, pledged, or otherwise disposed of or encumbered without the consent of the Manager, which consent may be given or withheld in its sole and absolute discretion, and that no market exists or will exist for the resale of any Interests. Subscriber understands further that withdrawals are restricted. In addition, Subscriber understands that the Interests have not been registered under the 1933 Act, or under any applicable state securities or blue sky laws or the laws of any other jurisdiction, and cannot be resold unless they are so registered or unless an exemption from registration is available. Subscriber understands that there is no plan to register the Interests under any law.

-2-

(g)    All information that Subscriber has provided concerning Subscriber, Subscriber's financial position and knowledge of financial and business matters is correct and complete as of the date hereof.

(h)    Except for ___*None*___ [fill in name of broker -if left blank, Subscriber has not dealt with a broker], Subscriber has not dealt with a broker in connection with the purchase of the Interest and agrees to indemnify and hold the Manager and the Company harmless from any claims for brokerage or finder's fees in connection with the transactions contemplated herein.

(i)    Subscriber is not relying on the Manager or the Company with respect to any legal, investment or tax considerations involved in the purchase, ownership and disposition of an Interest. Subscriber has relied solely upon the advice of, or has consulted with, in regard to the legal, investment and tax considerations involved in the purchase, ownership and disposition of an Interest, Subscriber's legal counsel, business and/or investment adviser, accountant and tax adviser.

(j)    If Subscriber is a corporation, partnership, trust or other entity, it is authorized and qualified to become a member in, and authorized to make its capital contribution to, the Company and the person signing this Subscription Agreement on behalf of such entity has been duly authorized by such entity to do so.

(k)    Subscriber is willing and able to bear the economic risks of an investment in the Company for an indefinite period of time. Subscriber has read and understands the provisions of the Operating Agreement.

(l)    Subscriber maintains Subscriber's domicile, and is not merely a transient or temporary resident, at the residence address shown on the signature page of this Subscription Agreement.

2.02    Qualification as an Accredited Investor

**(Complete subsection (a) or (b), whichever is applicable)**

(a)    The Subscriber, a natural person, represents and warrants to the Company and the Manager that the Subscriber is an Accredited Investor in that:

**(Please check applicable boxes)**

i.    The Subscriber has a net worth, or joint net worth with the Subscriber's spouse, at the time of purchase in excess of $1,000,000;

Yes    ☒    No    ☐

-3-

ii.    The Subscriber has had income in excess of $200,000 in each of the two most recent years or joint income with the Subscriber's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same in the current year.

Yes        No ☐

(b)    The Subscriber, if other than a natural person, represents and warrants to the Company and the Manager that the Subscriber is an Accredited Investor in that the Subscriber is:

1.    A "bank" as defined in Section 3(a)(2) of the 1933 Act.

2.    An "insurance company" as defined in Section 2(13) of the 1933 Act.

3.    Any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

4.    An investment company registered under the Investment Company Act of 1940, as amended (the "ICA").

5.    A business development company as defined in Section 2(a)(48) of the ICA.

6.    A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

7.    An employee benefit plan within the meaning of Title 1 of the Employee Retirement Income Security Act of 1974 ("ERISA"), (a) whose investment decisions are made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, insurance company or registered investment advisor; or (b) having total assets in excess of $5,000,000; or (c) if self-directed, the investment decisions are made solely by persons that are Accredited Investors.

8.    An organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, a corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring an Interest, having total assets in excess of $5,000,000.

9.    A trust, with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring an Interest, whose purchase is directed by a sophisticated investor.

-4-

10.    An entity in which all of the equity owners are Accredited Investors.

Indicate whether you qualify as an Accredited Investor under any of the categories described above.

A.    Yes_____          No_____

B.    If yes, place an "x" mark next to the number(s) of the tests under which you qualify as an Accredited Investor.

1___    2___    3___    4___    5___    6___    7(a)___    7(b)___    7(c)___    8___    9___    10___

## ARTICLE III

## MISCELLANEOUS

3.01    Signature Page to Fund Agreement.  By signing below, the Subscriber agrees to all of the terms and conditions of the Operating Agreement and agrees to be bound by the terms and conditions thereof and the Subscriber hereby joins in the execution of the Operating Agreement and hereby authorizes the Manager to attach the original signature page below to the Operating Agreement as a signature page to the Operating Agreement.

3.02    Amendment of Operating Agreement and Certificate.  The parties agree to execute an amendment of the Operating Agreement, and to execute and file an amendment of the Company's Certificate of Formation (the "Certificate"), if required, to conform to and embody the terms and conditions of this Agreement.

3.03    Addresses and Notices.  The address of each party for all purposes shall be the address set forth on the first page of this Agreement or on the signature page annexed hereto, or such other address of which the other parties have received written notice.  Any notice, demand or request required or permitted to be given or made hereunder shall be in writing and shall be deemed given or made when delivered in person or when sent to such party at such address by registered or certified mail, return receipt requested.

3.04    Titles and Captions.  All Article and Section titles or captions in this Agreement are for convenience only.  They shall not be deemed part of this Agreement and do not in any way define, limit, extend or describe the scope or intent of any provisions hereof.

3.05    Assignability.  This Agreement is not transferable or assignable by Subscriber.

3.06    Pronouns and Plurals.  Whenever the context may require, any pronoun used herein shall include the corresponding masculine, feminine or neuter forms.  The singular form of nouns, pronouns and verbs shall include the plural and vice versa.

-5-

3.07  Further Action. The parties shall execute and deliver all documents, provide all information and take or forbear from taking all such action as may be necessary or appropriate to achieve the purposes of this Agreement. Each party shall bear its own expenses in connection therewith.

3.08  Applicable Law. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware with regard to Delaware conflict of law rules.

3.09  Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties and their heirs, administrators, successors, legal representatives, personal representatives, transferees and assigns. If Subscriber is more than one person, the obligation of Subscriber shall be joint and several and the agreements, representations, warranties and acknowledgments herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, administrators and successors.

3.10  Integration. This Agreement, together with the Operating Agreement, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto. No covenant, representation or condition not expressed in this Agreement shall affect or be deemed to interpret, change or restrict the express provisions hereof.

3.11  Amendment. This Agreement may be modified or amended only with the written approval of all parties.

3.12  Creditors. None of the provisions of this Agreement shall be for the benefit of or enforceable by creditors of any party.

3.13  Waiver. No failure by any party to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement or to exercise any right or remedy available upon a breach thereof shall constitute a waiver of any such breach or of such or any other covenant, agreement, term or condition.

3.14  Rights and Remedies. The rights and remedies of each of the parties hereunder shall be mutually exclusive, and the implementation of one or more of the provisions of this Agreement shall not preclude the implementation of any other provision.

3.15  Counterparts. This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the original or the same counterpart.

3.16  Indemnification. Subscriber understands that the offer of the Interests to subscribe was made in reliance upon Subscriber's representations and warranties set forth in ARTICLE II above. Subscriber agrees to provide, if requested, any additional information that may be requested by the Manager to determine the eligibility of Subscriber to purchase the Interest. Subscriber hereby agrees to indemnify the Company, Manager and each of their respective affiliates and to defend and hold each of them harmless from and against any loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) due to or arising out of a breach of any representation, warranty or agreement of Subscriber contained in this Subscription Agreement or in any other document provided by Subscriber to the Company, Manager and

each of their respective affiliates, and to defend and hold each of them harmless against all losses, claims, damages, liabilities, costs or expenses (including reasonable attorneys' fees) arising as a result of the sale or distribution of the Interest or any part thereof by Subscriber in violation of the 1933 Act, other applicable law or the Operating Agreement or any misrepresentation or breach by Subscriber with respect to the matters set forth herein. In addition, Subscriber agrees to indemnify the Company, Manager and each of their respective affiliates and to defend and hold each of them harmless from and against, any and all loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) to which they may be put or which they may incur or sustain by reason of or in connection with any misrepresentations made by Subscriber with respect to the matters about which representations and warranties are required by the terms of this Subscription Agreement, or any breach of any such warranties or any failure to fulfill any covenants or agreements set forth herein or included in the Memorandum or Operating Agreement. Notwithstanding any provisions of this Subscription Agreement, Subscriber does not waive any rights granted to it under applicable securities laws.

IN WITNESS WHEREOF, Subscriber has executed this Subscription Agreement on this ____ day of ____ , ____

[THIS PAGE SHALL ALSO CONSTITUTE A SIGNATURE PAGE TO THE OPERATING AGREEMENT]

_REDACTED_

Social Security or Employer
Identification Number of
Subscriber

_Gary M. Post_

Print Name of Subscriber

Signature for Individual
Subscribers:

Signature of Subscriber

Signature of Subscriber, if Joint

Signature for Subscriber
Other than Individual:

By: _____

Signature of Authorized Signatory

Print Name and Title of Authorized Signatory

Mailing Address of
Subscriber:

_Box 24976_
Street

_Los Angeles  CA  90024_
City        State        Zip Code

Residence or Business
Address of Subscriber: _c/o Ambient Advisors_

_1801 Century Park East_
Street

_Suite 1132_

_Los Angeles, CA  90067_
City        State        Zip Code

Initial Capital Contribution: _REDACTED_

Method of Subscription: ☒ Wire Transfer ☐ Check

FOREGOING SUBSCRIPTION ACCEPTED:

New Millennium Capital Partners II, LLC
By:  First Street Manager II, LLC, Manager

By: _____

## Exhibit B

**GARY M. POST**
**BOX 92**
**ZEPHYR COVE, NV 89448**

## CHANGE OF ADDRESS NOTICE – EFFECTIVE IMMEDIATELY

December 21, 2006

New Millennium Capital Partners II, LLC
1044 Northern Boulevard
Suite 302
Roslyn, NY 11576

Re: Partner Account 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   Gary Post

Please be advised that I have changed my address for the above reference account effective immediately.

The OLD address is:

P.O. Box 24976
Los Angeles, CA 90024

The NEW address is:

P.O. Box 92
Zephyr Cove, NV  89448
775-588-1842 or 310-663-9090

Please send all correspondence to the new address shown in green above.

Sincerely,

Gary M. Post