# EXHIBIT A

Ernest E. Badway (EB-0105)
Colin R. Robinson (CR-8072)
George Tenreiro (GT-0622)
SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
44 Wall Street, 12th Floor
New York, New York 10005
(212) 461-2323
Attorneys for Plaintiff
Cyberlux Corporation



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE BATTS**

CYBERLUX CORPORATION,

        Plaintiff,

    vs.

AJW PARTNERS, LLC, AJW OFFSHORE,
LTD., AJW QUALIFIED PARTNERS, LLC,
and NEW MILLENNIUM CAPITAL
PARTNERS II, LLC,

        Defendants.

DOCKET NO. **07 CIV 7808**

Civil Action

**COMPLAINT FOR DECLARATORY,
INJUNCTIVE, AND MONETARY
RELIEF, AND JURY TRIAL DEMAND**

Plaintiff Cyberlux Corporation ("Cyberlux"), by way of its undersigned attorneys, Saiber Schlesinger Satz & Goldstein, LLC, and for its Complaint against Defendants AJW Partners, LLC ("AJW Partners"), AJW Offshore, Ltd. ("AJW Offshore"), AJW Qualified Partners, LLC ("AJW Qualified Partners"), and New Millennium Capital Partners II, LLC ("New Millennium") (collectively, "Defendants"), states as follows:

**NATURE OF ACTION**

1.    Cyberlux seeks declaratory, injunctive, and monetary relief for the irreparable harm caused by Defendants' illegal trading scheme in an action for, among other claims, fraud, misrepresentation, and breach of express and implied contract terms arising from a fraudulent

and deceptive secured loan financing terms orchestrated and/or facilitated by Defendants to convert shares of stock owned by Cyberlux for Defendants' own use and benefit.

2.      Beginning on or about September 24, 2004 to July 18, 2007, Defendants made false, fraudulent, and misleading statements to Cyberlux to induce Cyberlux to first enter into and then to induce Cyberlux to continue to abide by the terms of separate secured note agreements by making false, fraudulent, and misleading statements regarding the terms, structure, and overall intent of the subject secured note agreements and related lending and stock transactions.

3.      Cyberlux relied upon Defendants' false, fraudulent, and misleading statements to its detriment. Upon gaining possession of the warranted and registered shares of Cyberlux through the subject secured note agreements, one or more of the Defendants, or others acting in concert with them, secretly sold those shares and converted the proceeds to their own use and benefit, and concealed this breach of the subject secured note agreements from Cyberlux. This constituted an illegal underwriting that Defendants previously represented that they would not undertake. Consequently, Cyberlux has lost **hundreds of millions of** shares of stock having a current value of nearly $2 million, along with losing a substantial equity interest in the company. Defendants' death spiral securities scheme caused and continues to cause serious irreparable harm to Cyberlux in a specific amount to be determined at trial.

4.      Additionally, Cyberlux seeks injunctive relief and a declaratory judgment to void and nullify the various secured note agreements (and all respective sub-agreements) that required or require Cyberlux to issue securities to Defendants, because those agreements were engineered to be unlawful instruments, including instruments to further violations of federal securities laws.

## PARTIES

5.      Cyberlux is a small cap corporation organized under the laws of the State of Nevada, with its offices at 4625 Creekstone Drive, Suite 130, Research Triangle Park, Durham, North Carolina.

6.      Upon information and belief, New Millennium is a limited liability company organized under the laws of the State of New York, having its principal place of business in Roslyn, New York.

7.      Upon information and belief, AJW Partners is a limited liability company organized under the laws of the State of Delaware, with its principal office in Roslyn, New York.

8.      Upon information and belief, AJW Offshore is a corporation organized under the laws of the Cayman Islands, with its principal place of business in Roslyn, New York.

9.      Upon information and belief, AJW Qualified is a limited liability company organized under the laws of the State of New York, with its principal office in Roslyn, New York.

## JURISDICTION AND VENUE

10.      The jurisdiction of this Court over the claims asserted herein is founded upon 28 U.S.C. §§ 1331 and 1337, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and the rules and regulations promulgated thereunder by the United States Securities and Exchange Commission ("SEC").

11.      Additionally, the Defendants, directly or indirectly, used means and instruments of interstate commerce, including, without limitation, the mail, interstate telephone and other electronic communications, including fund transfers and the facilities of the National Association of Securities Dealers, Inc.'s ("NASD") Over-the-Counter Bulletin Board ("OTC-BB").

12.     The jurisdiction of this Court over the claims asserted herein is also founded upon 28 U.S.C. § 1332(a)(2), in that the action is one between a citizen or subject of the United States and citizens or subjects of foreign states, and the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

13.     Moreover, this Court has jurisdiction over this action to declare the rights of the plaintiff Cyberlux Corporation pursuant to 28 U.S.C. § 2201(a).

14.     This Court has jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.  Further, the state and common law claims are so related to the claims over which the Court has federal question jurisdiction that they are part of the same case or controversy.

15.     Venue is proper in this district pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) and given the contract documents controlling this case.

## FACTUAL ALLEGATIONS

**Nature of Cyberlux's Business**

16.     Cyberlux was incorporated in or about May 17, 2000, in the State of Nevada, to engage in the design, manufacture, and sales of LED lighting solutions to provide customers with enhanced lighting sources that are more efficient and less costly than conventional lighting sources.

17.     Cyberlux is quoted on the NASD OTC-BB and its common shares are purchased and sold through the NASD OTC-BB under the symbol "CYBL.OB."

**Transaction Agreements Between Defendants and Cyberlux**

18.     Like many small cap companies, Cyberlux requires financing for its business operations.  Unfortunately, predatory lenders like Defendants are always present to prey upon unsuspecting companies such as Cyberlux.

19.    Beginning on or about September, 2004 to July, 2007, Defendants and Cyberlux

entered into several and separate secured note agreements where Defendants ostensibly provided

Cyberlux funding for the sale of convertible notes and warrants, and Defendants then purchased

a certain agreed upon number of shares of Cyberlux's common stock (the "Secured Note

Agreements") at set prices.

20.    To effectuate the Secured Note Agreements, each Defendant induced Cyberlux to

enter into the following 10 separate Securities Purchase Agreements (the "Securities Purchase

Agreements"):

- Securities Purchase Agreement, dated **September 23, 2004**, between and among Defendants and Cyberlux, and providing for the issuance of 10% Callable Secured Convertible Notes in the aggregate principal amount of **$1,500,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 2,250,000 shares of Cyberlux's common stock for the aggregate consideration of $1,500,000.00, attached as **Exhibit A**;

- Securities Purchase Agreement, dated **April 22, 2005**, between and among Defendants and Cyberlux, and providing for the issuance of 10% Callable Secured Convertible Notes in the aggregate principal amount of **$1,500,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 25,000,000 shares of Cyberlux's common stock for the aggregate consideration of $1,500,000.00, attached as **Exhibit B**;

- Securities Purchase Agreement, dated **October 24, 2005**, between and among Defendants and Cyberlux, and providing for the issuance of 10% Callable Secured Convertible Notes in the aggregate principal amount of **$800,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 800,000 shares of Cyberlux's common stock for the aggregate consideration of $800,000.00, attached as **Exhibit C**;

- Securities Purchase Agreement, dated **December 28, 2005**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of **$700,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an

aggregate of 700,000 shares of Cyberlux's common stock for the aggregate consideration of $700,000.00, attached as **Exhibit D**;

- Securities Purchase Agreement, dated **March 27, 2006**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of **$500,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 19,000,000 shares of Cyberlux's common stock for the aggregate consideration of $500,000.00, attached as **Exhibit E**;

- Securities Purchase Agreement, dated **September 26, 2006**, between and among Defendants and Cyberlux, and providing for the issuance of 6% Callable Secured Convertible Notes in the aggregate principal amount of **$280,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 10,000,000 shares of Cyberlux's common stock for the aggregate consideration of $280,000.00, attached as **Exhibit F**;

- Securities Purchase Agreement, dated **April 18, 2007**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of **$400,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 10,000,000 shares of Cyberlux's common stock for the aggregate consideration of $400,000.00, attached as **Exhibit G**;

- Securities Purchase Agreement, dated **May 1, 2007**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of **$150,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 10,000,000 shares of Cyberlux's common stock for the aggregate consideration of $150,000.00, attached as **Exhibit H**;

- Securities Purchase Agreement, dated **June 20, 2007**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of **$150,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 10,000,000 shares of Cyberlux's common stock for the aggregate consideration of $150,000.00, attached as **Exhibit I**; and

- Securities Purchase Agreement, dated **July 13, 2007**, between and among Defendants and Cyberlux, and providing for the issuance of 8% Callable Secured Convertible Notes in the aggregate principal amount of

**$150,000.00**, convertible into shares of Cyberlux's Common Stock, par value $.001 per share, whereby Cyberlux warranted to purchase an aggregate of 10,000,000 shares of Cyberlux's common stock for the aggregate consideration of $150,000.00, attached as **Exhibit J**.

21.      Each Securities Purchase Agreement set forth varied disbursement funding schedules and distribution funding amounts, but otherwise shared all of the same or similar structural terms and restrictions regarding same.  See Exhibits A-J.

22.      Along with the above Securities Purchase Agreements, the Secured Note Agreements included separate and respective Securities Agreements, Registration Rights Agreements, Intellectual Property Agreements, Stock Purchase Warrants, Callable Secured Convertible Notes, and, among other agreements, Guaranty Agreements (collectively, the "Transaction Agreements").

23.      Under the Transaction Agreements, and at various times and through repeated transactions from November 19, 2004 through August 6, 2007, the Defendants purchased from Cyberlux secured notes convertible into Cyberlux common stock and warrants to purchase Cyberlux common stock (collectively, "Cyberlux Securities").  These transactions were to be controlled by the terms set forth in separate but largely identical Callable Secured Convertible Note Instruments and separate but largely identical Callable Stock Purchase Warrant Agreements, along with normal market conditions.

24.      In separate transactions, Defendants individually purchased from Cyberlux secured convertible notes in a collective principal amount totaling $1,913,944.89.  These convertible notes were then convertible into Cyberlux's common stock.

25.      Additionally, and again under separate and numerous transactions, Defendants individually received warrants to purchase 97,750,000 shares of Cyberlux common stock.

26. These shares had a $0.001 par value per share, and an exercise price equal per share equal to $0.01, $0.02, $0.03, $0.06, $0.10, $0.15, or $0.50, depending upon the applicable warrant agreement.

**Cyberlux's Reliance Upon Defendants' Representations**

27. Defendants induced Cyberlux to agree to the foregoing terms by expressly representing that Defendants were negotiating in good faith and making "representation and warranties" that were "true and correct in all material respects."

28. Defendants repeatedly assured Cyberlux that Defendants were long-term investors interested in supporting Cyberlux's present and future interests, and repeatedly assured Cyberlux that Defendants would in no way act to prejudice Cyberlux or damage the value of its stock, including expressly agreeing that it would not effect "short sales."

29. Cyberlux also relied upon Defendants' representation that they would not exceed the volume trading restrictions set forth in the Transaction Agreements. Specifically, Defendants would limit conversions to "no more than 4.99% of the outstanding shares of [Cyberlux's] Common Stock."

30. In sharp contrast to the above relied upon terms, Cyberlux discovered that Defendants fraudulently induced Cyberlux to enter into the Transaction Agreements to perpetuate a predatory securities scheme as described below.

**Defendants Effectuate an Elaborate Securities Fraud Scheme**

31. Defendants induced Cyberlux to enter into the Transaction Agreements with the deliberate intent to manipulate the Cyberlux stock price downwards by short sales and dumping.

32. Defendants effectuated its predatory trading strategy by selling their positions as soon or shortly after Cyberlux stock was issued after the secured notes were converted or

exercised into Cyberlux stock, and accomplished this by violating the agreed upon volume trading restrictions set forth under the Transaction Agreements. The price of Cyberlux's stock naturally fell because the supply of the Cyberlux stock increased while its demand remained constant.

33.    The manipulated precipitous drop in Cyberlux stock price also was favorable to Defendants and detrimental to Cyberlux inasmuch as it lowered the conversion price that Defendants would have to pay under the Transaction Agreements.

34.    Defendants' deliberate market manipulation of Cyberlux's stock was and continues to be devastating to Cyberlux, because Cyberlux was deceived into issuing more stock to Defendants than it otherwise would have under normal market conditions.

35.    Defendants illicitly profited from its market manipulation by obtaining huge amounts of Cyberlux stock at substantial and artificially manipulated discounts.

36.    In brief, Defendants' scheme involved (and involves) engaging in a short-selling trading strategy. Defendants purchased registered convertible Cyberlux shares through conversion of convertible notes. Upon conversion, Defendants obtain huge amounts of Cyberlux common stock at substantial discounts, covering their short positions and reaping huge profits.

37.    To date, Defendants have converted hundreds of thousands of notes into hundreds of millions of shares. Defendants' illicit profits far exceed the amount loaned to Cyberlux.

38.    Upon discovery of Defendants' illicit scheme, Cyberlux recently refused to convert the requested additional shares, because, among other justified reasons, Defendants may be in direct breach of subject Securities Purchase Agreements, whereby Defendants agreed that they would not collectively own more than "4.9% of the outstanding shares of [Cyberlux's] Common Stock."

39.    Cyberlux also wanted to avoid aiding and abetting a securities fraud whereby Defendants collectively assumed greater than 5% ownership of Cyberlux under a unified common ownership structure between all Defendants without any intention of reporting its greater than 5% ownership interest to the SEC as required by law and engaged in a scheme that would be effectively an unregistered underwriting.

40.    Defendants' abrupt decision to sell off a high volume number of Cyberlux shares breaches its express and implied promises to Cyberlux, and highlights nefarious negotiation and trading practices. Defendants deliberately intended for Cyberlux to breach the terms of the Transaction Agreements, which, in turn, triggered favorable default terms. Defendants simply waited to exploit an alleged "breach" that was deliberately engineered for self-gain.

41.    Defendants' scheme was accomplished (and masked) by Defendants' use of multiple accounts at numerous broker dealers to give the appearance that Cyberlux's stock was experiencing high volume trading and real price volatility under normal market forces.

**Defendants' Force Cyberlux to Hire a Corporate Spy**

42.    Defendants also touted the bona fides, experience, and financial soundness of a financial consultant, named Gelmon, and induced Cyberlux to agree to hire Mr. Gelmon at a salary of $10,000.00 pursuant to the terms set forth under a separate agreement. Mr. Gelmon had no experience in Cyberlux's business prior to this retention and was forced upon Cyberlux by Defendants. The stated reason for hiring Mr. Gelmon was so that he would assist Cyberlux in obtaining financing from alternative sources so that Defendants would ultimately be bought out.

43.    To date, despite being compensated, Mr. Gelmon has miserably failed to obtain any capital for Cyberlux, to say nothing of favorable financing terms, and, instead, acts as the "eyes and ears" of Defendants at Cyberlux. Additionally, Mr. Gelmon utilized his influence to

advance another predatory element of Defendants' scheme, changing the originally agreed upon

debt conversion rates to further accelerate Defendants' conversion share volume, resulting in a

further limitation of Cyberlux's debt retirement.

44.    Defendants appear to be seasoned practioners in stock manipulation and securities

fraud schemes, unfairly preying upon small cap companies like Cyberlux. In fact, Defendants'

parent company, N.I.R. Group, is one of the leading investors in what is commonly referred to as

"death spiral convertibles."

**Cyberlux's Damages and Request for Equitable Relief**

45.    Defendants' predatory and illegal trading scheme combined with their rapid

conversion of Cyberlux's common stock, and exercise of warrants, together with the sale of

Cyberlux's common stock issued to Defendants, has forced Cyberlux's stock price to fluctuate

dramatically and to ultimately decrease, causing serious erosion of the equity value of Cyberlux

in an amount to be determined at trial.

46.    Additionally, Defendants' unlawful actions have caused Cyberlux to experience

or will cause Cyberlux to experience greater difficulty in securing financing or issuing any debt

or equity offerings. Cyberlux also has incurred substantial legal costs to investigate and reveal

Defendants' illicit activity.

47.    Allowing Defendants to continue their illegal trading schemes with the issuance

of any more Cyberlux stock to Defendants would cause further erosion to the equity value of

Cyberlux, that has suffered irreparable harm.

**First Claim for Relief**
**(Violation of Section 10(b) of the Securities Exchange Act of 1934**
**and Rule 10b-5 promulgated thereunder)**

48.     Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49.     Relying on Defendants' representations that they would not short sell Cyberlux stock under the terms set forth under controlling Securities Purchase Agreement, Cyberlux sold to each of the Defendants secured convertible notes and warrants.

50.     Despite their representations, Defendants manipulated downward the stock price of Cyberlux by short selling Cyberlux stock to profit from the manipulation and price decline and to take advantage of increased conversion rights resulting from that market manipulation.

51.     The Defendants' misrepresentations to Cyberlux concerning their investment intent were material misrepresentations that Cyberlux relied upon in agreeing to the terms set forth under the Transaction Agreements and in issuing and selling Cyberlux securities to Defendants.

52.     Defendants' scheme defrauded and continues to defraud Cyberlux by use of means and/or instrumentalities of interstate commerce and/or the United States mails and/or wire services, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. 78(j), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, by causing Cyberlux to issue and sell securities to Defendants, and by virtue of Defendants' manipulation, Cyberlux has suffered and continues to suffer damages in an amount to be determined at trial.

**Second Claim for Relief**
**(Fraud)**

53.     Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54.   Defendants materially misrepresented that that they would act in good faith and not employ fraudulent means for self-gain in its execution of the Transaction Agreements.

55.   Defendants made those misrepresentations with the knowledge that they were false with the intent that Cyberlux would rely upon those misrepresentations.

56.   As a result of Cyberlux's misrepresentation, Cyberlux was induced to enter into the Transactions Agreements.

57.   Cyberlux has suffered damages that are a result of Defendants' misconduct in an amount to be determined at trial.

### Third Claim for Relief
### (Negligent Misrepresentation)

58.   Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59.   Defendants represented to Cyberlux that, among other things, they would at all times relevant act in a manner consistent with reasonable business practices and honor the terms under the Transaction Agreement in good faith.

60.   Defendants knew or should have known that its misrepresentations were false when made.

61.   Cyberlux detrimentally relied on the misrepresentations of the Defendants in determining whether to enter into the Transaction Agreements.

62.   As a result of the negligent representations made by the Defendants, Cyberlux has been substantially damaged.

## Fourth Claim for Relief
### (Breach of Fiduciary Duty)

63.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64.    Defendants, by virtue of their position as the owner of Cyberlux's securities, owe Cyberlux a fiduciary duty, when, among other things, Defendants sell or otherwise handle Cyberlux's stock.

65.    Defendants breached their duty to Cyberlux when Defendants employed a fraudulent scheme that artificially manipulated and negatively impacted Cyberlux's market stock.

66.    Defendants' breach of their fiduciary duty resulted in Cyberlux being substantially damaged in an amount to be determined at trial.

## Fifth Claim for Relief
### (Breach of Contract)

67.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68.    The Defendants specifically agreed that they would not effect "short sales" of Cyberlux's Common Stock. See Exhibits A-J.

69.    Defendants also agreed under the subject Securities Purchase Agreements that they would not collectively own more that "4.9% of the outstanding shares of [Cyberlux's] Common Stock."

70.    However, the Defendants manipulated downward the stock price of Cyberlux by short selling Cyberlux's stock in order to profit from the manipulation and price decline and to

take advantage of increased conversion rights resulting from that manipulation and a trading scheme.

71.    The Defendants committed a material breach of the Securities Purchase Agreements by short selling Cyberlux's stock, and Defendants' apparent deliberate and deceptive attempt to gain over 5% ownership of Cyberlux by a unified common ownership structure among Defendants.

72.    Cyberlux has been injured as result of the Defendants' breach of the Securities Purchase Agreement and its plan and/or decision to gain over 5% ownership interest in Cyberlux, and Cyberlux and is entitled to damages in an amount to be determined at trial.

### Sixth Claim for Relief
**(Breach of Contract)**

73.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.    Defendants agreed to limit conversions to no more than 4.99% of the issued and outstanding at time of conversion at any one time.

75.    Throughout this time, the Defendants converted shares in an aggregate conversion total of 383,464,564 shares.

76.    Defendants gained an illegal profit by exceeding the trading volume restrictions.

77.    Defendants committed a material breach of the Notes by exceeding the trading volume restrictions contained in the Notes.

78.    Cyberlux has been injured as result of the Defendants' breach of the Notes and is entitled to damages in an amount to be determined at trial.

## Seventh Claim for Relief
### (Breach of Contract)

79.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80.    Defendants made false, fraudulent, misleading representations to induce Cyberlux to agree to hire a financial consultant, Mr. Gelmon, and Cyberlux, to its detriment, relied upon those representations in its agreement to hire Mr. Gelmon, and in its separate decisions to enter into the Transaction Agreements.

81.    Cyberlux, in consideration for competent financial consulting services to advance capital sources and favorable funding terms agreed to pay to hire Mr.Gelmon at a salary of $10,000.00, and did hire and pay Mr. Gelmon $10,000.00 for his services.

82.    To date, despite being compensated, Mr. Gelmon has failed to obtain any capital for Cyberlux, and this failure has created additional financial difficulties for Cyberlux. Moreover, Mr. Gelmon has demonstrated no loyalty towards Cyberlux, but, instead, has shown a distinct predilection to report back corporate matters to Defendants.

83.    Thus, Cyberlux has been injured as result of the Defendants' breach, and Cyberlux and is entitled to monetary and consequential damages in an amount to be determined at trial.

## Eighth Claim for Relief
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

84.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 83 as if fully set forth herein.

85.    As a result of Defendants' intentional, deliberate, and unlawful violations of the federal securities laws, Securities Purchase Agreements, Notes, and other agreements under the

Transaction Agreements, Defendants violated implied covenants of good faith and fair dealings and Cyberlux has been injured and damaged in an amount to be determined at trial.

### Ninth Claim for Relief
### (Conversion)

86.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87.    Defendants' misrepresentations to Cyberlux that they would not short sell Cyberlux's common stocks constitute conversion of Cyberlux's notes.

88.    As a result of Defendants' unlawful misconduct, Defendants have damaged Cyberlux in an amount to be determined at trial.

### Tenth Claim for Relief
### (Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201-2202)

89.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 88 as if fully set forth herein.

90.    By reason of the foregoing, there is an actual and existing controversy, within the meaning of 28 U.S.C. § 2201, between Cyberlux and Defendants as to the validity of the agreements between them requiring Cyberlux to issue securities to the Defendants.

91.    Cyberlux is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201 and the Court's inherent equity powers, declaring that the agreements between Cyberlux and Defendants are illegal and violate the federal securities laws, and should therefore be voided.

### Eleventh Claim for Relief
### (Injunctive Relief)

92.    Cyberlux restates and incorporates by reference its allegations contained in paragraphs 1 through 91 as if fully set forth herein.

93.    Defendants should be preliminarily and permanently enjoined from short selling Cyberlux common stock and/or exercising their respective warrants that they immediately sell, which is causing Cyberlux irreparable harm.

94.    Cyberlux is entitled to a declaratory judgment that its agreements with Defendants violate Section 10(b) of the Exchange Act, 15 U.S.C. §78(j), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

95.    Cyberlux will suffer irreparable harm if the conversions, exercise of warrants, and sales of stock are not stopped.

### Prayer for Relief

**WHERFORE**, Cyberlux prays that the judgment be entered against Defendants as follows:

1.    Awarding Cyberlux damages in an amount to be determined at trial, but believed to exceed $2 million, or such other amount sufficient to compensate Cyberlux for the injuries it has sustained, together with costs, including attorneys' fees incurred in the prosecution of this action and appropriate interest;

2.    A declaratory judgment that the agreements between Cyberlux and Defendants are void as against federal securities laws, together with costs, including attorneys' fees incurred in the prosecution of this action;

3.    A preliminary and permanent injunction to enjoin any further violations of the securities laws and to prevent irreparable harm to Cyberlux, including an order to enjoin Defendants from further short selling Cyberlux's common stock and/or exercising their respective warrants; and

4.    Awarding Cyberlux such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), plaintiff Cyberlux Corporation demands a trial by jury of any issue triable of right by a jury.

Dated: New York, New York
       September 4, 2007

Respectfully submitted,

SAIBER SCHLESINGER SATZ
& GOLDSTEIN, LLC

By: _____
       Ernest E. Badway
       Colin R. Robinson
       George Tenreiro
       44 Wall Street, 12th Floor
       New York, New York 10005
       (212) 461-2323

       Attorneys for Plaintiff
       Cyberlux Corporation

# EXHIBIT B



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

AJW PARTNERS, LLC, AJW OFFSHORE,
LTD, AJW QUALIFIED PARTNERS, LLC,
NEW MILLENNIUM CAPITAL PARTNERS
II, LLC, and AJW MASTER FUND, LTD.

Index No. 603098/2007
Purchase Date: September 17, 2007

Plaintiffs,

**SUMMONS**

-against-

Plaintiff designates New York County
as the place of trial

CYBERLUX CORPORATION and
DONALD F. EVANS,

Defendants have consented to be sued in
New York County.

Defendants.

To:    Cyberlux Corporation
       4625 Creekstone Drive, Suite 130
       Durham, North Carolina 27703

       Donald F. Evans
       Cyberlux Corporation
       4625 Creekstone Drive, Suite 130
       Durham, North Carolina 27703

NEW YORK
COUNTY CLERK'S OFFICE

SEP 1 7 2007

NOT COMPARED
WITH COPY FILE

**YOU ARE HEREBY SUMMONED** and required to serve upon plaintiffs' attorneys an

answer to its complaint in this action within twenty (20) days after the service of this summons,

exclusive of the day of service (or within thirty (30) days after the service is complete if this

summons is not personally delivered to you within the State of New York), and in the case of

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

552641-1



Dated: New York, New York
        September 17, 2007

                        OLSHAN GRUNDMAN FROME ROSENZWEIG
                        & WOLOSKY LLP

                        By:  _____
                             Thomas J. Fleming, Esq.
                             *Attorneys for Plaintiffs*
                             Park Avenue Tower
                             65 East 55th Street
                             New York, New York 10022
                             212.451.2300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

AJW PARTNERS, LLC, AJW OFFSHORE, LTD,
AJW QUALIFIED PARTNERS, LLC, NEW
MILLENNIUM CAPITAL PARTNERS II, LLC, and
AJW MASTER FUND, LTD.

Plaintiffs,

-against-

CYBERLUX CORPORATION and
DONALD F. EVANS,

Defendants.

Index No. 603098 / 2007

COMPLAINT

NEW YORK
COUNTY CLERK'S OFFICE

SEP 1 7 2007

NOT COMPARED
WITH COPY FILE

Plaintiffs AJW Partners, LLC, AJW Offshore Ltd., AJW Qualified Partners, LLC, and

New Millennium Capital Partners II, LLC and AJW Master Fund, Ltd., (collectively, the

"Plaintiffs") by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for their

Complaint, allege:

The Parties

1.      Plaintiff New Millennium Capital Partners II, LLC ("New Millennium" or

"NMCP") is a limited liability company organized under the laws of the State of New York, with

its principal office in Roslyn, New York.

2.      Plaintiff AJW Partners, LLC ("AJW Partners" or "AJWP") is a limited liability

company organized under the laws of the State of Delaware, with its principal office in Roslyn,

New York.

3.      Plaintiff AJW Offshore, Ltd. ("AJW Offshore" or "AJWO") is a corporation

organized under the laws of the Cayman Islands, with its principal office in Roslyn, New York.

4.    Plaintiff AJW Qualified Partners LLC ("AJW Qualified" or "AJWQP") is a limited liability company organized under the laws of New York, with its principal office in Roslyn, New York.

5.    Plaintiff AJW Master Fund, Ltd. ("AJW MF") is a corporation organized under the laws of the Cayman Islands.

6.    Defendant Cyberlux Corporation ("Cyberlux") is a corporation organized under the laws of the State of Nevada, with its principal place of business in Durham, North Carolina. Cyberlux's common stock is registered with the United States Securities and Exchange Commission (the "SEC") and its shares are publicly traded on the NASDAQ bulletin board under the symbol "CYBL.OB."

7.    Defendant Donald Evans ("Evans") is an executive officer of Cyberlux who issued a personal guaranty of its debts to plaintiffs.

Jurisdiction and Venue

8.    Defendant has consented to be sued in this County. Defendant also has had sufficient contacts for such jurisdiction, from which contacts the claims asserted herein arise.

The Notes Issued to Plaintiffs

9.    In September 2004, Cyberlux entered into a Securities Purchase Agreement with Plaintiffs, under which it agreed to issue, for good and valuable consideration, certain Callable Secured Convertible Notes (the "Notes") in the aggregate principal amount of $1,500,000. All of the Notes referenced herein are in substantially similar form.

10.    For good and valuable consideration paid to Cyberlux, plaintiff AJW Partners received Notes in September 2004 in the aggregate principal amount of $80,000, and warrants to purchase 120,000 shares of Cyberlux's common stock at an exercise price of $0.50 per share.

2

551857-1

11.    For good and valuable consideration paid to Cyberlux, plaintiff AJW Offshore received Notes in September 2004 in the aggregate principal amount of $185,000, and warrants to purchase 277,500 shares of Cyberlux's common stock at an exercise price of $0.50 per share.

12.    For good and valuable consideration paid to Cyberlux, plaintiff AJW Qualified received Notes in September 2004 in the aggregate principal amount of $220,000, and warrants to purchase 330,000 shares of Cyberlux's common stock at an exercise price of $0.50 per share.

13.    For good and valuable consideration paid to Cyberlux, plaintiff New Millennium received Notes in September 2004 in the aggregate principal amount of $15,000, and warrants to purchase 22,500 shares of Cyberlux's common stock at an exercise price of $0.50 per share.

14.    The Notes define as an Event of Default, *inter alia*, Cyberlux's failure to issue shares of its common stock to Plaintiffs in response to Plaintiffs' exercise of their conversion rights, or to announce or threaten that it will not honor its obligation to do so.

15.    Since September 2004, Plaintiffs have purchased additional Notes and warrants from Cyberlux, the texts of which are substantially identical to those of the Notes and warrants that Cyberlux issued to Plaintiffs in September 2004, as follows:

a. <u>April 22, 2005</u>.  Aggregate principal amount: $1,500,000.

|  | Aggregate Notes | Aggregate warrants at $0.30 per share |
|---|---|---|
| NMCP | $ 30,000 | 500,000 |
| AJWP | $ 150,000 | 2,5000,000 |
| AJWO | $ 780,000 | 9,841,000 |
| AJWQP | $ 540,000 | 9,000,000 |

b. <u>October 24, 2005</u>.  Aggregate principal amount: $800,000.

|  | Aggregate Notes | Aggregate warrants |
|---|---|---|

3

at $0.10 per share

| | Aggregate Notes | at $0.10 per share |
|---|---|---|
| NMCP | $ 12,000.00 | 12,000 |
| AJWP | $ 97,000.00 | 97,600 |
| AJWO | $ 432,800.00 | 432,800 |
| AJWQP | $ 257,600.00 | 257,600 |

c. <u>December 28, 2005</u>. Aggregate principal amount: $700,000.

| | Aggregate Notes | Aggregate warrants at $0.15 per share |
|---|---|---|
| NMCP | $ 10,500.00 | 10,500 |
| AJWP | $ 81,900.00 | 81,900 |
| AJWO | $ 378,000.00 | 378,000 |
| AJWQP | $ 229,600.00 | 229,600 |

d. <u>March 27, 2006</u>. Aggregate principal amount: $500,000.

| | Aggregate Notes | Aggregate warrants at $0.10 per share |
|---|---|---|
| NMCP | $ 5,000.00 | 190,000 |
| AJWP | $ 55,000.00 | 2,090,000 |
| AJWO | $ 305,000.00 | 11,590,000 |
| AJWQP | $ 135,000.00 | 5,130,000 |

e. <u>July 26, 2006</u>. Aggregate principal amount: $500,000.

| | Aggregate Notes | Aggregate warrants at $0.06 per share |
|---|---|---|
| NMCP | S 6,500.00 | 195,000 |
| AJWP | $ 48,500.00 | 1,455,000 |
| AJWO | $ 295,000.00 | 8,850,000 |

4

| | | |
|---|---|---|
| AJWQP | $ 150,000.00 | 4,500,000 |

f. <u>September 26, 2006</u>. Aggregate principal amount: $280,000.

| | Aggregate Notes | Aggregate warrants at $0.06 per share |
|---|---|---|
| NMCP | $ 2,800.00 | 100,000 |
| AJWP | $ 25,200.00 | 900,000 |
| AJWO | $ 168,000.00 | 6,000,000 |
| AJWQP | $ 84,000.00 | 3,000,000 |

g. <u>December 20, 2006</u>. Aggregate principal amount: $600,000.

| | Aggregate Notes | Aggregate warrants at $0.06 per share |
|---|---|---|
| NMCP | $ 7,200.00 | 240,000 |
| AJWP | $ 52,200.00 | 1,740,000 |
| AJWO | $ 358,800.00 | 11,960,000 |
| AJWQP | $ 181,800.00 | 6,060,000 |

h. <u>April 18, 2007</u>. Aggregate principal amount: $400,000.

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| NMCP | $ 12,000 | 300,000 |
| AJWP | $ 20,000 | 500,000 |
| AJWO | $ 320,000 | 8,000,000 |
| AJWQP | $ 48,000 | 1,200,000 |

i. <u>May 1, 2007</u>. Aggregate principal amount: $150,000.

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| NMCP | $ 4,500.00 | 300,000 |

5

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| AJWP | $    7,500.00 | 500,000 |
| AJWO | $  120,000.00 | 9,200,000 |
| AJWQP | $    18,000.00 | (missing) |

j. <u>June 4, 2007</u>.  Aggregate principal amount: $120,000.

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| NMCP | $    2,400.00 | 20,000 |
| AJWP | $    14,400.00 | 120,000 |
| AJWO | $    96,000.00 | 800,000 |
| AJWQP | $    7,200.00 | 60,000 |

k. <u>June 20, 2007</u>.  Aggregate principal amount: $150,000.

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| NMCP | $1,650.00 | 110,000 |
| AJWP | $13,200.00 | 880,000 |
| AJW MF | $135,150 | 9,010,000 |

l. <u>July 13, 2007</u>.  Aggregate principal amount: $150,000.

| | Aggregate Notes | Aggregate warrants at $0.02 per share |
|---|---|---|
| NMCP | $1,650.00 | 110,000 |
| AJWP | $13,200.00 | 880,000 |
| AJW MF | $135,150 | 9,010,000 |

16.    In each of the above-listed transactions, Plaintiffs and Cyberlux entered into a

Securities Purchase Agreement, Security Agreement, Intellectual Property Security Agreement,

6

551857-1

and other agreements, the texts of which are substantially similar to those of the agreements that Plaintiffs and Cyberlux entered into in September 2004.

17.    Cyberlux has defaulted on the outstanding Notes, the Securities Purchase Agreement, and the other agreements by, among other things, refusing to issue shares of its common stock to Plaintiffs in response to duly presented notices of conversion. Cyberlux has also announced that it will not honor future conversions. As a result of the foregoing default, Plaintiffs have exercised their right under the Notes to accelerate and demand payment in full of the Default Sum or Default Amount, as defined in Section 3.10 of the Notes, plus appropriate interest and penalties.

The Security Agreements

18.    Under the Security Agreement and Intellectual Property Security Agreement, Cyberlux induced Plaintiffs to purchase the Notes by granting them a first priority security interest in all of Cyberlux's goods, inventory, contract rights, general intangibles, patents, trademarks, copyrights, receivables, and documents. The Security Agreement and Intellectual Property Security Agreement provide that if an Event of Default under the Notes occurs, Plaintiffs shall have all rights available under the Uniform Commercial Code, plus the right to immediate possession of the collateral and the right to operate Cyberlux's business using the collateral.

19.    Plaintiffs duly perfected their security interests under the Security Agreement and Intellectual Property Security Agreement in connection with each of the transactions.

Defendant Evans' Guaranty

20.    In September 2004 and in April 2005, defendant Donald F. Evans executed a Guaranty and Pledge Agreement whereby he guaranteed unconditionally all of Cyberlux's

7

obligations to Plaintiffs, whether then or thereafter existing, pursuant to the Notes issued at those times and pledged shares of Cyberlux stock as collateral for his guaranty.

21.    Under the Guaranty and Pledge Agreement, Evans agreed, *inter alia*, that he would not sell, assign, transfer, pledge, hypothecate, encumber or otherwise dispose of any of the shares that he had pledged as collateral for his guaranty.

22.    Under the Guaranty and Pledge Agreement, Evans agreed, *inter alia*, that if an Event of Default occurred under any of Cyberlux's obligations to Plaintiffs, Plaintiffs would have, *inter alia*, the rights to (a) receive and retain all dividends or distributions from the pledged shares; (b) transfer the pledged shares to Plaintiffs or their designees; (c) sell the pledged shares at a public or private sale; and (d) proceed by a suit in law or equity to foreclose their security interests in the pledged shares.

Attorneys Fees

23.    In addition to the foregoing, upon a default, Plaintiffs are entitled to an award of attorneys' fees pursuant to Section 4.5 of the Notes, and Section 8(a) of the Securities Purchase Agreement.

First Claim for Relief
(Breach of Contract)

24.    Plaintiffs restate the allegations in paragraphs 1 through 23.

25.    Based upon the foregoing, Cyberlux has breached its obligations to AJW Partners under the Notes. As a direct, approximate and foreseeable result of Cyberlux's breach, AJW Partners is entitled to recover from Cyberlux an amount to be determined at trial, representing the Default Sum or Default Amount as defined in Section 3.10 of the Notes, plus all interest and penalties, and attorneys' fees.

8

551857-1

### Second Claim for Relief
(Breach of Contract)

26.    Plaintiffs restate the allegations in paragraphs 1 through 23.

27.    Based upon the foregoing, Cyberlux has breached its obligations to AJ W Offshore under the Notes. As a direct, approximate and foreseeable result of Cyberlux's breach, AJW Offshore is entitled to recover from Cyberlux an amount to be determined at trial, representing the Default Sum or Default Amount as defined in Section 3.10 of the Notes, plus all interest and penalties, and attorneys' fees.

### Third Claim for Relief
(Breach of Contract)

28.    Plaintiffs restate the allegations in paragraphs 1 through 23.

29.    Based upon the foregoing, Cyberlux has breached its obligations to AJW Qualified under the Notes. As a direct, approximate and foreseeable result of Cyberlux's breach, AJW Qualified is entitled to recover from Cyberlux an amount to be determined at trial, representing the Default Sum or Default Amount as defined in Section 3.10 of the Notes, plus all interest and penalties, and attorneys' fees.

### Fourth Claim for Relief
(Breach of Contract)

30.    Plaintiffs restate the allegations in paragraphs 1 through 23.

31.    Based upon the foregoing, Cyberlux has breached its obligations to New Millennium under the Notes. As a direct, approximate and foreseeable result of Cyberlux's breach, New Millennium is entitled to recover from Cyberlux an amount to be determined at trial, representing the Default Sum or Default Amount as defined in Section 3.10 of the Notes, plus all interest and penalties, and attorneys' fees.

9

551857-1

### Fifth Claim for Relief
(Breach of Contract)

32.    Plaintiffs restate the allegations in paragraphs 1 through 23.

33.    Based upon the foregoing, Cyberlux has breached its obligations to AJW Master Fund under the Notes. As a direct, approximate and foreseeable result of Cyberlux's breach, AJW Master Fund is entitled to recover from Cyberlux an amount to be determined at trial, representing the Default Sum or Default Amount as defined in Section 3.10 of the Notes, plus all interest and penalties, and attorneys' fees.

### Sixth Claim for Relief
(Breach of Contract)

34.    Plaintiffs restate the allegations in paragraphs 1 through 23.

35.    Based upon the foregoing, Plaintiffs are entitled to an Order directing Cyberlux to marshal, in preparation for foreclosure, all of its assets in which Plaintiffs have a security interest under the Security Agreement and Intellectual Property Security Agreement, and deliver promptly to Plaintiffs a list of those assets and their locations.

36.    Plaintiffs have no adequate remedy at law.

### Seventh Claim for Relief
(Breach of Contract)

37.    Plaintiffs restate the allegations in paragraphs 1 through 23.

38.    Based upon the foregoing, Plaintiffs are entitled to an Order directing Evans to marshal, in preparation for foreclosure, all of the Collateral in which Plaintiffs have a security interest under the Guaranty and Pledge Agreement, and deliver promptly to Plaintiffs those assets for liquidation.

39.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

551857-1

A.    Against defendant Cyberlux, awarding plaintiffs all sums due under the

Notes, plus prejudgment interest, attorneys' fees, costs and disbursements,

in an amount to be determined at trial but believed to be in excess of

$6,000,000.

B.    Against defendant Evans, awarding plaintiffs all sums due under the

Guaranty Agreement, plus interest and costs.

C.    Ordering that Cyberlux marshal, in preparation for foreclosure, all of its

assets in which Plaintiffs have a security interest under the Security

Agreement and Intellectual Property Security Agreement, and deliver

promptly to Plaintiffs a list of those assets and their location.

D.    Ordering that Evans marshal, in preparation for foreclosure, all of its

assets in which Plaintiffs have a security interest under the guaranty and

Pledge Agreement.

E.    Granting such other and further relief as the Court deems just and proper.

Dated: New, York, New York
        September 17, 2007

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: _____
       Thomas J. Fleming
       *Attorneys for Plaintiffs*
       Park Avenue Tower
       65 East 55th Street
       New York, New York 10022
       (212) 451-2300

11

551857-1