Thomas J. Fleming (TF 4423)
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
Attorneys for Plaintiffs AJW Partners, LLC, AJW Offshore, Ltd.,
AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJW PARTNERS, LLC, AJW OFFSHORE, LTD, AJW QUALIFIED PARTNERS, LLC, and NEW MILLENNIUM CAPITAL PARTNERS II, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>CYBERLUX CORPORATION and DONALD F. EVANS,<br><br>Defendants. | Case No. 07-CV-8367<br><br>ECF CASE<br><br>DECLARATION OF COREY RIBOTSKY |

COREY RIBOTSKY swears under the penalties of perjury, pursuant to 28 U.S.C. §1746, that:

1. I am the managing member of AJW Partners, LLC, AJW Offshore, Ltd, AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC ("Plaintiffs"). I submit this declaration on personal knowledge in support of Plaintiffs' motion for a preliminary injunction directing defendant Cyberlux Corporation ("Cyberlux") to issue to it certain stock certificates, honoring certain notices of conversion.

### The Parties

2. Plaintiffs are all investment funds, based in Roslyn, New York, that loaned money to Cyberlux over a three-year period.

568893-1

3.  Cyberlux is a corporation organized under the laws of the State of Nevada, with its principal place of business in Durham, North Carolina. Cyberlux designs, manufactures, and sells light-emitting diode lighting systems. Its shares trade publicly under the symbol "CYBL."

### Cyberlux's Sale of Convertible Notes to Plaintiffs

4.  Plaintiffs have loaned over $6 million to Cyberlux. To obtain the first loan from Plaintiffs, Cyberlux entered into a Securities Purchase Agreement in September 2004, under which Cyberlux issued Callable Secured Convertible Notes (the "Notes") to Plaintiffs in the aggregate principal amount of $1,500,000. After this transaction, Plaintiffs purchased Notes from Cyberlux worth approximately $4.62 million between April 2005 and July 2007. During these years, we carried Cyberlux's fledgling business as it developed a state of the art lighting product. In August 2007, just as Cyberlux appeared to deliver on the promise of a breakthrough lighting product, it refused to honor our Notes. Plaintiffs have at all times complied with their covenants under the Notes.

5.  Each of our investments involved Notes with similar terms, memorialized in agreements of identical form. Annexed as Exhibit A is a true and correct copy of Cyberlux's $180,000 Note to defendant AJW Qualified Partners, dated May 24, 2005. The terms and conditions in this Note, except for the dates and dollar amounts, are identical to those in the other Notes that defendants purchased from Cyberlux.

### Notices of Conversion

6.  Pursuant to Article 1 of the Notes, Plaintiffs have certain conversion rights, whereby they can convert the outstanding principal amount of the Notes into common stock shares and can exercise such rights by submitting notices of conversion to Cyberlux. (Exhibit A, Art. 1)

568893-1

7.  Plaintiffs delivered to Cyberlux notices of conversion, dated August 10, 2007, in the total amount of 23,563,213 shares at $.0008 per share. Annexed as Exhibit B, is a true and correct copy of such notices of conversion. Cyberlux has conceded that it has failed to honor those notices of conversion as set forth in the Declaration of Thomas J. Fleming (Fleming Dec. ¶ 3, Ex. A, ¶ 38)

8.  Additionally, Plaintiffs recently delivered an additional set of notices of conversion, dated February 7, 2008, converting a total amount of 3 million shares at $.005 per share. Cyberlux has failed to honor such notices of conversion. Annexed as Exhibit C, is a true and correct copy of such notices of conversion.

## Cyberlux's Default on the Notes

9.  Section 3.2 of the Notes define as an "Event of Default," *inter alia*, Cyberlux's failure to honor timely, or its threat that it will not honor, a notice of conversion. Cyberlux has conceded that it defaulted on the Notes — and thereby breached its agreements with Plaintiffs as well — by refusing to honor those notices of conversion, despite receiving notice of its default by letter dated, August 21, 2007. Annexed as Exhibit D, is a true and correct copy of this letter.

10. Pursuant to Section 3.10 of the Notes, that default made all of the outstanding Notes' principal and unpaid interest, along with default penalties, immediately due and payable.

## Absent Injunctive Relief, Plaintiffs will be Irreparably Harmed

11. Unless this Court immediately orders Cyberlux to deliver to Plaintiffs the shares of stock they are entitled to, Plaintiffs will suffer irreparable harm.

12. Cyberlux operates under precarious financial conditions and will likely be unable to respond in damages to any ultimate award in the case. Such precarious financial conditions

are demonstrated in Cyberlux's most recent publicly available financial data and are set forth in the Declaration of Thomas J. Fleming.

13. Cyberlux's recent refusal to honor the additional notices of conversion add to the severity and immediacy of the harm to Plaintiffs. As the total amount of outstanding shares owed to Plaintiffs grows, and in light of Cyberlux's financial woes, it becomes less likely that Cyberlux will be able to respond in damages to any ultimate award in the case.

14. Plaintiffs' sole practical remedy is the prompt issuance of the common stock called for by the Notes and the notices of conversion, which plaintiffs can then sell and place any proceeds in escrow pending the final determination of the case. Cyberlux recognized this self-evident fact in Section 4.13 of the Notes which provides:

> Remedies: The Borrower acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the Borrower acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the borrower of the provisions of this Note, that the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, prevent or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required.

(Ex. A, Section 4.13)

### The Balance of Hardships Tip Decidedly in Plaintiffs' Favor

15. It is inconceivable that Cyberlux could be harmed by the award of the requested injunctive relief, which merely requires Cyberlux to fulfill its obligations under the Notes.

16. Also, as expressed in Cyberlux's recent filings with the United States Securities and Exchange Commission, and set forth in the Declaration of Thomas J. Fleming, Cyberlux has

recently authorized 250,000,000 additional shares to be issued, which greatly reduces any possible harm to Cyberlux from the delivery of shares to Plaintiffs.

      17.     Moreover, Cyberlux will not be harmed since, upon any sale of the shares of stock delivered to them, the Plaintiffs will place all proceeds in escrow pending the final adjudication of the case.

<u>Conclusion</u>

18. Based on the foregoing, on the Declaration of Thomas J. Fleming, and the accompanying Memorandum of Law, I respectfully request that the Court grant Plaintiffs' motion for a preliminary injunction.

Dated: February 29, 2008

_____
COREY RIBOTSKY