Thomas J. Fleming (TF 4423)
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
Attorneys for Plaintiffs AJW Partners, LLC, AJW Offshore, Ltd.,
AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJW PARTNERS, LLC, AJW OFFSHORE, LTD, AJW QUALIFIED PARTNERS, LLC, and NEW MILLENNIUM CAPITAL PARTNERS II, LLC,<br><br>                            Plaintiffs,<br><br>          -against-<br><br>CYBERLUX CORPORATION and DONALD F. EVANS,<br><br>                            Defendants. | Case No. 07-CV-8367<br><br>ECF CASE |

---

### MEMORANDUM OF LAW IN SUPPORT
### OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Plaintiffs*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

568722-2

Table of Contents

Page

Preliminary Statement ................................................................................................................. 2

Factual Statement ........................................................................................................................ 2

    The Parties ...................................................................................................................... 2

    Cyberlux's Sale of Convertible Notes to Plaintiffs ......................................................... 3

    Plaintiffs' Notices of Conversion .................................................................................... 3

    Cyberlux's Default on the Notes ..................................................................................... 4

    Plaintiffs' Rights and Remedies under the Notes ........................................................... 4

    Cyberlux's Precarious Financial Situation ..................................................................... 4

    Cyberlux's Authorization of Further Outstanding Shares of Stock ................................ 5

    Procedural Background of This Case .............................................................................. 5

    The Prior Federal Action ................................................................................................ 6

Argument ..................................................................................................................................... 6

    I     PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION DIRECTING DEFENDANT CYBERLUX TO DELIVER SHARES OF COMMON STOCK ............................................................................................. 6

          A.    Standard of Review ............................................................................. 6

          B.    Irreparable Harm ................................................................................. 6

          C.    Plaintiffs are Likely to Win on the Merits .......................................... 9

          D.    The Balance of Hardships Tip Decidedly in Plaintiffs' Favor ......... 10

Conclusion ................................................................................................................................ 10

Thomas J. Fleming (TF 4423)
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
Attorneys for Plaintiffs AJW Partners, LLC, AJW Offshore, Ltd.,
AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJW PARTNERS, LLC, AJW OFFSHORE, LTD, AJW QUALIFIED PARTNERS, LLC, and NEW MILLENNIUM CAPITAL PARTNERS II, LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> CYBERLUX CORPORATION and DONALD F. EVANS, <br><br> Defendants. | Case No. 07-CV-8367 <br><br> ECF CASE |

MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

  Plaintiffs AJW Partners, LLC, AJW Offshore, Ltd., AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC, by their attorneys Olshan Grundman Frome Rosenzweig & Wolosky LLP, submit this memorandum of law in support of their motion for a preliminary injunction to direct Cyberlux Corporation ("Cyberlux") to honor its contractual obligation to deliver shares of stock to plaintiffs for sale in the public markets, with any proceeds to be held in escrow pending further order of the Court.

568722-2

Preliminary Statement

Plaintiffs commenced this action to recover funds owed by defendants arising from their default on millions of dollars in Callable Secured Convertible Notes (the "Notes). Pursuant to the terms of the Notes, plaintiffs delivered notices of conversion to Cyberlux on or about August 10, 2007, and again, recently, on or about February 7, 2008. Cyberlux has refused to honor these notices of conversion, thus defaulting on the Notes. Injunctive relief is urgently required to compel Cyberlux to honor the express terms of the Notes. Because Cyberlux is insolvent or near-insolvent with no apparent ability to honor an award of money damages, plaintiffs' sole effective remedy is the delivery of shares of stock pursuant to the notices of conversion. Any delay in delivering these shares threatens plaintiffs with serious harm because if the shares are delivered a year from now after a full trial, there may be no market for them. No harm will befall Cyberlux because the sale proceeds will be held in escrow pending the final determination of the case.

Factual Statement

The facts set forth below are from the Complaint in this matter, the Declaration of Corey Ribotsky, the Declaration of Thomas J. Fleming, and the exhibits thereto.

The Parties

Plaintiffs are all investment funds, based in Roslyn, New York, that loaned money to defendant Cyberlux over a three-year period. (Compl. ¶¶ 6-9)

Cyberlux is a corporation organized under the laws of the State of Nevada, with its principal place of business in Durham, North Carolina. (Compl. ¶ 5) Cyberlux designs, manufactures, and sells light-emitting diode lighting systems. Its shares trade publicly under the symbol "CYBL." (Compl. ¶ 17)

Cyberlux's Sale of Convertible Notes to Plaintiffs

Plaintiffs have loaned over $6 million to Cyberlux. To obtain the first loan from plaintiffs, Cyberlux entered into a Securities Purchase Agreement in September 2004 under which Cyberlux issued Callable Secured Convertible Notes to plaintiffs in the aggregate principal amount of $1,500,000. (Compl. ¶¶ 9-15) After this transaction, plaintiffs purchased Notes from Cyberlux worth approximately $4.62 million between April 2005 and July 2007. (Compl. ¶ 15) During these years, plaintiffs carried Cyberlux's fledgling business as it developed a state of the art lighting product. In August 2007, just as Cyberlux appeared to deliver on the promise of a breakthrough lighting product, it refused to honor plaintiffs' Notes. Plaintiffs have at all times complied with their covenants under the Notes.

Each of plaintiffs' investments involved Notes with similar terms, memorialized in agreements of identical form. (Compl. ¶ 15; Ribotsky Dec. ¶ 5, Ex. A)

Plaintiffs' Notices of Conversion

Pursuant to Article 1 of the Notes, Plaintiffs have certain conversion rights, whereby they can convert the outstanding principal amount of the Notes into common stock and can exercise such rights by submitting notices of conversion to Cyberlux. (Ribotsky Dec ¶ 6, Art. 1)

Plaintiffs delivered notices of conversion, dated August 10, 2007, in the total amount of 23,563,213 shares at $.0008 per share. (Ribotsky Dec ¶ 7, Ex. B) Cyberlux has conceded that it has failed to honor those notices of conversion. (Fleming Dec. ¶ 3, Ex. A ¶ 38)

Additionally, Plaintiffs recently delivered additional notices of conversion, dated February 7, 2008, converting a total amount of 3 million shares at $.005 per share. Cyberlux has failed to honor such notices of conversion. (Ribotsky Dec. ¶ 8, Ex. C) According to its most recent SEC filing, it has 552,142,881 shares outstanding. (Fleming Dec. Ex. C at p. 6) The issuance of the shares sought by plaintiffs is nominal in relation to the current shares outstanding

3

and available.  According to Yahoo! Finance, Cyberlux average daily volume exceeds 1.9 million shares and its shares closed at $00.025 per share on March 8, 2007.  (Fleming Dec. Ex. D)

### Cyberlux's Default on the Notes

The Notes define as an "Event of Default," *inter alia*, Cyberlux's failure to honor timely, or its threat that it will not honor, a notice of conversion.  (Ribotsky Dec. ¶ 9, Ex. A § 3.2) Cyberlux has conceded that it defaulted on the Notes — and thereby breached its agreements with Plaintiffs as well — by refusing to honor those notices of conversion.  (Fleming Dec. ¶ 3, Ex. A ¶ 38)  That default made all of the outstanding Notes' principal and unpaid interest, along with default penalties, immediately due and payable.  (Ribotsky Dec. ¶ 10, Ex. A § 3.10)

### Plaintiffs' Rights and Remedies under the Notes

Pursuant to Section 4.13 of the Notes, Cyberlux stipulated that any breach of its obligations under the Notes would cause irreparable harm to Plaintiffs, that a remedy at law would be inadequate, and that Plaintiffs are entitled to seek injunctive relief curing any breach of the Notes, in addition to all other available legal and equitable remedies, and waiving any requirement for Plaintiffs to post a bond in order to obtain injunctive relief.  (Ribotsky Dec. ¶ 14, Ex. A § 4.13)

### Cyberlux's Precarious Financial Situation

Cyberlux operates under precarious financial conditions, bringing in minimal revenues and incurring huge losses, spending more money than it receives from operations, and retaining little cash on hand.

For example, according to its most recent publicly available financial data, in the nine months ending September 30, 2007, Cyberlux generated revenues of $521,814 with a net operating loss of $2,885,113.  (Fleming Dec. ¶ 5, Ex. B, p.4)  In this time period, it generated

negative operating cash flows of $1,793,351 and had an ending cash balance of just $1,630. In fact, Cyberlux had a cash overdraft of $68,348. (Fleming Dec. ¶ 5 Ex. B, p.5) Additionally, Cyberlux admits that its "current liabilities exceeded its current assets by $3,891,035 as of September 30, 2007." (Fleming Dec. ¶ 5 Ex. B, p.21) Cyberlux has advised the investing public that it has only continued to exist by continuing to obtain financing, and there can be no assurance of any additional equity or debt financing being obtained by Cyberlux. (Fleming Dec. ¶ 5 Ex. B, pp. 21, 25) Cyberlux has conceded in its most recent 10-QSB filing that "[t]hese factors among others may indicate that the Company will be unable to continue as a going concern for a reasonable period of time." (Fleming Dec. ¶ 5 Ex. B, p.21) Additionally, Cyberlux has conceded in its most recent 10-QSB filing that its independent accountant has noted that such factors "may raise substantial doubt about [Cyberlux's] ability to continue as a going concern." (Fleming Dec. ¶ 5 Ex. B, p.25)

<u>Cyberlux's Authorization of Further Outstanding Shares of Stock</u>

Cyberlux recently authorized the issuance of 250,000,000 additional shares of common stock, increasing its authorized shares from 700,000,000 to 950,000,000. (Fleming Dec. ¶ 7 Ex. C)

<u>Procedural Background of This Case</u>

On September 17, 2007, plaintiffs filed this action in New York State Supreme Court, asserting claims against defendants for breach of contract and for an order directing Cyberlux to marshal its assets in preparation for foreclosure. On September 25, 2007, defendants filed a Notice of Removal. On October 5, 2007, Plaintiffs moved to remand, which motion is now sub judice.

<u>The Prior Federal Action</u>

In a bid to deflect attention from its default, Cyberlux filed a pre-emptive lawsuit in this Court, Case 07 CV 7808 (DAB). Cyberlux's Complaint asserts federal claims for securities fraud and for a declaration that its agreements with plaintiffs are void under federal securities law. The Complaint also asserts a variety of state-law claims sounding in tort and breach of contract. (Fleming Dec. ¶ 3, Ex. A) On September 21, 2007, plaintiffs filed a motion to dismiss, which is now sub judice.

Argument

I

PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
DIRECTING DEFENDANT CYBERLUX TO DELIVER SHARES OF COMMON STOCK

A.   <u>Standard of Review</u>

A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction, (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, and (3) a balance of hardships tipping decidedly in the movant's favor. *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002); *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 272-73 (2d Cir. 1986); *Cartier A Division of Richemont North America, Inc. v. Aaron Faber Inc.*, 396 F. Supp.2d 356, 358 (S.D.N.Y. 2005).

B.   <u>Irreparable Harm</u>

Unless an injunction is granted, directing Cyberlux to honor the notices of conversion and to deliver the shares of stock, Plaintiffs will be irreparably harmed.

"[P]reliminary injunctions are proper to prevent a defendant from making a judgment uncollectible..." *Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986). In

other words, "[a] court may properly find that irreparable harm exists where nothing in the record suggests that a defendant will be able to pay a judgment." *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 2003 WL 328302, at *4 (S.D.N.Y. Feb. 11, 2003) (citing *Alvenus Shipping Co., Ltd. v. Delta Petroleum (U.S.A.) Ltd.,* 876 F.Supp. 482, 487 (S.D.N.Y. 1994)).

Specifically, a defendant company's insolvency or potential insolvency "can constitute irreparable harm when it is possible that the defendant will not be able to pay damages at the conclusion of the litigation." *Castle Creek Technology Partners, LLC v. Cellpoint Inc.*, 2002 WL 31958696, at *3  (S.D.N.Y. Dec. 9, 2002) (citing *Netwolves Corp. v. Sullivan*, 2001 WL 492463, at *11 (S.D.N.Y. May 9, 2001)).  The decision in *Castle Creek* is directly on point. There, the plaintiff sought a preliminary injunction compelling defendant Cellpoint to deliver approximately 1.6 million shares of Cellpoint common stock in connection with the conversion of a promissory note to common stock.  The District Court granted the requested injunction, finding that defendant Cellpoint "if not currently insolvent, may become so in the near future." *Id.* at *4, *9.  Cellpoint had recurring significant losses and was spending more money than it received through its operations.  *Id.* at *4.  In addition, as with Cyberlux, Cellpoint's accountants had expressed substantial doubt about the company's ability to continue as a going concern unless it obtained additional financing.  *Id.*  The Court also found that plaintiff Castle Creek had demonstrated a substantial likelihood that it would prevail on the merits of its claim.  *Id.* at **5-6.  Moreover, as in this case, plaintiff sought to enforce a written agreement.

Here, based on Cyberlux's woeful financial performance, it is quite likely that Cyberlux will lack the financial resources to make plaintiffs whole for its breach of the Notes, absent an

7

568722-2

injunction directing Cyberlux to deliver shares of common stock to plaintiffs pursuant to the Notes which Plaintiffs may then sell in the public markets.

Cyberlux's recent refusal to honor the additional notices of conversion, totaling 3 million shares, adds to the immediacy and severity of the harm.  As the total amount of outstanding shares owed to plaintiffs grows, and in light of Cyberlux's financial woes, it becomes less likely that Cyberlux will be able to respond in damages to any ultimate award in the case.

Additionally, Cyberlux has contractually stipulated that its refusal to honor the Notices of Conversion amounts to irreparable harm and that plaintiffs are entitled to injunctive relief.  A contractual stipulation that a breach amounts to irreparable harm "might arguably be viewed as an admission by [defendant] that plaintiff will suffer irreparable harm were [defendant] to breach the contract[]..." *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158, 174 (S.D.N.Y. 2006) (quoting *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir. 1999)).  At the very least, such a contractual clause is entitled to "great weight." *Alpha Capital*, 2003 WL 328302, at * 5.

Here, Cyberlux stipulated in Section 4.13 of the Notes that any breach of its obligations under the Notes would cause irreparable harm to plaintiffs, that a remedy at law would be inadequate, that plaintiffs are entitled to an injunction curing any breach of the Notes, in addition to all other available legal and equitable remedies, and that it waived any requirement for Plaintiffs to post a bond in order to obtain injunctive relief.  (Ribotsky Decl. 14, Ex. A, Section 4.13)  Such provision, coupled with Cyberlux's dire financial condition, should result in the granting of the preliminary injunction.

*Alpha Capital* is directly on point.  There, plaintiffs, holders of warrants, sued the defendant corporation for failing to deliver shares of stock and moved for a preliminary injunction directing defendant to deliver such shares.  In that case, the warrants contained a

8

clause in which the defendant stipulated that any default of the warrants would not be adequately remedied in law and agreed that the plaintiff could obtain an injunction. The District Court granted the preliminary injunction, holding that such clause should be given "great weight," and, coupled with the defendant's serious financial situation and deficit, would face the plaintiff with irreparable harm, absent injunctive relief. *Alpha Capital*, 2003 WL 328302, at **5-6.

Additionally, unless the Court orders an injunction, plaintiffs will lose their bargained-for rights and remedies. Their entitlement to the conversion of the Notes to shares and their entitlement to an injunction to enforce those rights were bargained-for rights and remedies in the Notes. Such loss of bargained-for rights and remedies may alone amount to an irreparable injury. *Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 154 F.Supp.2d 570, 584 (S.D.N.Y. 2001) (finding loss of contractual rights constituted irreparable injury). Cyberlux, having signed the Note and the Security Agreement and having received approximately $6 million, cannot now selectively repudiate the provisions of the Notes providing that the plaintiffs are entitled to convert the Notes to shares and further providing that the Plaintiffs are entitled to an injunction to enforce their conversion rights.

For all the foregoing reasons, plaintiffs will be irreparably harmed absent an injunction.

C.      Plaintiffs are Likely to Win on the Merits

In the instant case, it is uncontroverted and for the most part admitted by Cyberlux that plaintiffs delivered to it Notices of Conversion, that it failed to honor certain of such Notices of Conversion, and that such failure amounts to a default under the Notes. *Alpha Capital* is again instructive. The District Court in *Alpha Capital* found that the defendant "readily admit[ted] that it did not deliver" the shares of stock in breach of a warrant and held that plaintiffs, therefore, demonstrated a "'clear' or 'substantial' likelihood of success on the merits." *Alpha Capital,* 2003 WL 328302, at **3-4. Here, too, Cyberlux has readily admitted that it did not honor the

9

notices of conversion. (Fleming Dec. ¶ 3 Ex. A, ¶ 38) Further, the plain language of the Notes specifically provides that such failure amounts to a default. (Ribotsky Dec. ¶ 9 Ex. A, § 3.2) Therefore, plaintiffs have demonstrated a "clear" or "substantial" likelihood of success, and certainly have raised "sufficiently serious questions going to the merits." *Merkos L'Inyonei Chinuch*, 312 F.3d at 96.

### D. The Balance of Hardships Tip Decidedly in Plaintiffs' Favor

It is inconceivable that Cyberlux could be harmed by the award of the requested injunctive relief, which merely requires Cyberlux to fulfill its obligations under the Notes. Additionally, Cyberlux's recent large authorization of 250,000,000 additional shares eliminates any argument that Cyberlux might make that by honoring Plaintiffs' notices of conversion it would be harmed by issuing such large amounts of shares. (Fleming Dec. ¶ 7 Ex. C, p.21)

Again, *Alpha Capital* is instructive. There, the District Court held that the plaintiffs were entitled to a preliminary injunction directing defendants to deliver to them shares of stock despite defendant's separate action claiming that the plaintiffs engaged in a short-selling scheme. *Alpha Capital*, 2003 WL 328302 at **5-6. The District Court reasoned that if the defendant was ultimately successful in its action it could be "adequately compensated" at that time, and that the "balance of hardships tip[ped] decidedly in the [plaintiffs'] favor." *Id.*

Here, even if Cyberlux is ultimately successful in the 7808 Action it can be "adequately compensated" at that time. Moreover, Cyberlux will not be harmed because, upon any sale of the shares of stock delivered to them, the plaintiffs will place all proceeds in escrow pending the final adjudication of the case.

### Conclusion

For the reasons set forth above, plaintiffs AJW Partners, LLC, AJW Offshore, Ltd., AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC respectfully request that

10

568722-2

the Court issue an Order directing defendant to deliver to plaintiffs 23,563,213 shares of defendant's common stock in accordance with the Notes and with the Notices of Conversion dated August 19, 2007, and to deliver 3,000,000 additional shares of defendant Cyberlux's common stock in accordance with the Notes and the Notices of Conversion dated February 7, 2008, providing that upon any sale of all or portion of these shares, the proceeds shall be held in escrow pending the final adjudication of the case.

Dated: New York, New York
        March 6, 2008

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

By: /s/   Thomas J. Fleming
Thomas J. Fleming (TF 4423)
*Attorneys for Plaintiffs AJW Partners, LLC, AJW Offshore, Ltd., AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

568722-2